**GORTON–PEW FISHERIES CO. v. MALLEY, formerly Collector of Internal Revenue, and three other cases.**

**Nos. 3371, 3372, 3373, 5544.**

District Court, D. Massachusetts.

Aug. 7, 1934.

Hale & Dorr and Daniel L. Brown, all of Boston, Mass., for Gorton-Pew Fisheries Co. and Gorton-Pew Vessels Co.

Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Sp. Asst. to U. S. Atty., both of Boston, Mass., Frank J. Wideman, Asst. Atty. Gen., and Andrew D. Sharpe and Frederick W. Dewart, Sp. Assts. to the Atty. Gen., for John F. Malley.

Francis J. W. Ford, U. S. Atty., and J. Duke Smith, Sp. Asst. to the U. S. Atty., both of Boston, Mass., for Thomas W. White.

BREWSTER, District Judge.

The above cases have been consolidated. They were referred to an auditor and, after his report, the parties entered into stipulations agreeing upon all issues of fact, leaving only questions of law to be considered by the court.

While there are four actions brought against the collectors of internal revenue, it is conceded that the plaintiffs, if entitled to recover at all, are entitled to recover only in one of the actions, and that, preferably, No. 3371, Gorton-Pew Fisheries Company v. Malley.

The plaintiffs will, for convenience, hereinafter be referred to as the taxpayer.

The essential facts are as follows:

The Gorton-Pew Fisheries Company and the Gorton-Pew Vessels Company filed consolidated returns for the fiscal years ending March 31, 1918, and March 31, 1919. The companies were entitled, under section 234 (a) (8) of the Revenue Act of 1918 (40 Stat. 1078), to an allowance on war facilities subject to amortization. The consolidated net income, before any amortization allowance, was $882,284.88 for the fiscal year ending March 31, 1918, and was $387,866.11 for the year ending March 31, 1919.

The parties have agreed that the amortization deduction allowed with respect to the cost of facilities acquired prior to March 31, 1918, was $311,649.38, and the deduction allowable with respect to the cost of facilities acquired subsequent to March 31, 1918, was $38,584.-80, or a total amortization deduction of $350,-234.18. The amortization period was the calendar year 1918.

The taxpayer paid taxes amounting to $212,203.90 for the fiscal year ending March 31, 1918, and $16,744.32 for the year ending March 31, 1919. It is admitted that the computation of this tax was erroneous, but the government contends that, if correctly computed according to the statute and regulations applicable to 1918 and 1919 taxes, the tax liability would be increased rather than decreased, and, in view of Lewis v. Reynolds, 284 U. S. 281, 52 S. Ct. 145, 76 L. Ed. 293, there can be no refund.

The controversy arises over the method adopted by the Commissioner of Internal Revenue in allocating the reasonable deduction for amortization allowed by section 234 (a) (8) of the Revenue Act of 1918 which reads as follows:

"(a) That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions: * * *

"(8) In the case of buildings, machinery, equipment, or other facilities, constructed, erected, installed, or acquired, on or after April 6, 1917, for the production of articles contributing to the prosecution of the present war, and in the case of vessels constructed or acquired on or after such date for the transportation of articles or men contributing to the prosecution of the present war, there shall be allowed a reasonable deduction for the amortization of such part of the cost of such facilities or vessels as has been borne by the taxpayer, but not again including any amount otherwise allowed under this title or previous Acts of Congress as a deduction in computing net income. At any time within three years after the termination of the present war the Commissioner may, and at the request of the taxpayer shall, reexamine the return, and if he then finds as a result of an appraisal or from other evidence that the deduction originally allowed was incorrect, the taxes imposed by this title and by Title III for the year or years affected shall be redetermined and the amount of tax due upon such redetermination, if any, shall be paid upon notice and demand by the collector, or the amount of tax overpaid, if any, shall be credited or refunded to the taxpayer in accordance with the provisions of section 252."

The statute providing for amortization allowance sheds no light upon the way that allowances should be spread in cases where the amortization period falls partly within one fiscal year and partly within another. The Revenue Act of 1918, in section 205 (a), 40 Stat. 1061, clearly points out a method of determining the tax where the fiscal year begins in 1917 and ends in 1918. The method to be pursued under this statute is easy to understand and apply.

The administration of section 234 called for regulations providing for cases where the calendar year contained parts of two fiscal periods. In those first promulgated the amount allocated to the calendar year was apportioned over the fiscal year periods according to the lapse of time.

In American Hawaiian S. S. Co., 7 B. T. A. 13, these regulations were criticized, the Board of Tax Appeals holding that the amortization should be allocated over the fiscal year or parts thereof contained within the amortization period according to the income of each fiscal year, or part thereof, contained within the amortization period. Thereupon the Commissioner revised the regulations, and the regulations governing in the case at bar are in article 185 of Regulations 45, as amended by T. D. 4133, February 21, 1928, which read as follows:

"All taxpayers claiming an allowance for amortization shall compute the amount of their claims applicable to each accounting period between January 1, 1918, to the date specified above. In all such claims costs during the amortization period incurred in one taxable period shall be segregated from those costs incurred in any other taxable period, except that there shall be included as the costs of the first such taxable period those costs incurred from April 6, 1917 to the end of such taxable period. A separate allowance shall be determined in respect of such costs incurred in each separate taxable period falling partly or wholly within the amortization period. The allowance so computed in respect to the group of costs incurred in each taxable period shall then be spread over that taxable period and the succeeding (but not preceding) taxable periods falling partly or wholly within the amortization period. The apportionment of the allowance for each taxable period to such period and the following periods shall be based upon the ratio which the income (falling within the amortization period) of each of such periods bears to the total income (falling within the amortization period) for such period and such following periods. In this computation the income shall be the income before the deduction for amortization. The portion of the allowance allocated to the taxable period beginning in 1917 and ending in 1918 shall be the amortization deduction used in computing the net income for such period subject to 1918 rates. The sum of the portions of allowances allocated to each subsequent taxable period shall be allowed as a deduction in computing the taxable net income of such taxable periods."

In computing the taxpayer's 1918 tax, the Commissioner deducted from net income an amortization allowance of $134,398.80, which represented 43.125 per cent. of $311,649.38, the total amortization deduction allowed with respect to the cost of facilities acquired prior to the end of the fiscal year ending in 1918, and in determining the 1919 tax he deducted 56.875 per cent. of the same amount, together with all of the amortization deduction allowed with respect to the cost of facilities acquired subsequent to March 31, 1918, making a total deduction of $215,835.38. In arriving at the percentages, the Commissioner took three-twelfths of the total income for the fiscal year ending in 1918 and nine-twelfths of the total income for the fiscal year ending in 1919. The total of these two amounts was $511,470.80. This sum, for the purposes of spreading the amortization allowance, was taken to be income received by the taxpayer for the amortization period, January 1, 1918, to December 31, 1918, prior to deduction on account of amortization. And the Commissioner found the percentage which the income ascribed to the first three months of 1918 was of the total income for the calendar year and also the percentage which the income ascribed to the last nine months of 1918 bore to the same total income. It may conduce to a more clear presentation of the Commissioner's procedure to incorporate herein his computation, which is based upon figures concerning which there is no dispute.

"We compute the net income for the amortization period (January 1, 1918, to December 31, 1918) prior to the deduction on account of amortization by taking—

3/12 of $882,284.88, the net income for the fiscal year and ended March 31, 1918...$220,571.22 (a)

9/12 of $387,866.11, the net income for the fiscal year ended March 31, 1919....$290,899.58 (b)

Total ...............$511,470.80 (c)

Percentage of (a) to (c) is 43.125

Percentage of (b) to (c) is 56.875

$311,649.38 is stipulated as the amortization deduction allowed with respect to cost of facilities acquired prior to March 31, 1918, which were used during the entire amortization period.

The portion of this which is applicable to the period January 1, 1918, to March 31, 1918, is—

43.125% of $311,649.38, which is ........................$134,398.80 being the total amortization deduction for the fiscal year ended March 31, 1918.
The portion applicable to the period April 1, 1918 to December 31, 1918, is 56.875% of $311,649.38 · which is ..............$177,250.58
$38,584.80 is stipulated as the amortization deduction allowed with respect to the cost of facilities acquired subsequent to March 31, 1918... 38,584.80 $215,835.38
_____
which is the total amortization deduction for the fiscal year ended March 31, 1919.
Total amortization deduction allowed for both fiscal years ................$350,234.18"

■ The Commissioner has assumed that the total profits for the amortization period is the sum of one-fourth of the consolidated net profits for the fiscal year ending in 1918 and three-fourths of the profits for the fiscal year ending in 1919. No objection seems to have been made to this assumption. The parties differ respecting the apportionment of the total amortization allowance between portions of two taxable periods falling within the amortization period. The regulations adopted with respect to the allocation have the force of law if compatible with statutes and must be followed. In the regulations promulgated in 1928 (Regulations 45, Art. 185, as amended by T. D. 4133), the authorities undertook to provide for a case where the amortization period covered more than one taxable period by providing that: "A separate allowance shall be determined in respect of such costs incurred in each separate taxable period falling partly or wholly within the amortization period. The allowance so computed in respect to the group of costs incurred in each taxable period shall then be spread over that taxable period and the succeeding (but not preceding) taxable periods falling partly or wholly within the amortization period." If the regulation had stopped there, it might well be taken to mean that the allowance should be applied to reduce the income of that portion of the taxable period which fell within the amortization period, and, if the allowance was not exhausted by this application, the balance was to be spread over the succeeding period.

■ This construction of the regulation would be illustrated in the instant case by deducting from the net income for the fiscal year ending in 1918 $220,571.22, which was one-fourth of the net income for that fiscal year; and whatever remained of the amount allowed with respect to costs prior to March 31, 1918, would be carried forward into the succeeding period. The regulations, however, go on to provide that: "The apportionment of the allowance for each taxable period to such period and the following periods shall be based upon the ratio which the income (falling within the amortization period) of each of such periods bears to the total income (falling within the amortization period) for such period and such following periods."

This provision for apportionment is not altogether free from ambiguity, but I think it is open to the construction which the Commissioner has apparently put upon it in his computation above set forth.

Since this is the construction which has been put upon it by the Department in administering the law, and has doubtless been followed in adjusting the taxes of other corporations, the construction ought not to be set aside unless clearly wrong. For that reason I am disposed to adopt it for the purposes of deciding this case, and have concluded that the computation should stand.

As I understand it, the taxpayer agrees that the amortization allowance should be allocated as a deduction against portions of the amortization period on the basis of income of those portions, but claims that the amount so allocated for the first three months of 1918 should be placed on an annual or entire year basis in the 1918 equations under section 205 (40 Stat. 1061), inasmuch as every other factor in those equations is placed on such a basis.

According to the taxpayer's own computation, made in conformity with the theory thus advanced, it seeks a deduction from the

net income of the fiscal year, in determining the tax under the 1918 act, of four times $134,398.45 (the amount deducted by the Commissioner). This computation of the tax for that period would result in a deduction, as an amortization allowance, of more than $200,000 in excess of the amount agreed upon as a proper deduction with respect to the cost of facilities acquired prior to March 31, 1918. I am unable to find anything in the law which would justify the Commissioner in making any such allowance. It seems to me that, when an applied theory leads to results so far wide of the mark, there must be something wrong with the theory, and, of course, the defect is obvious. The taxpayer has taken over 172 per cent. of the agreed amortization allowance and deducted it from the consolidated net income for the fiscal year ending March 31, 1918, in order to arrive at the amount of the tax liability under the Revenue Act of 1918.

 I agree that the object of the legislation was to relieve certain corporations from the necessity of paying confiscatory taxes levied upon income resulting from war activities. This relief was afforded by allowing an extraordinary deduction from income, one "quite unrelated to the normal determination of net income." Polachek v. Commissioner, 8 B. T. A. 1. See, also, Appeal of Walcott Lathe Co., 2 B. T. A. 1231, and F. Burkhart Mfg. Co. v. Commissioner, 9 B. T. A. 1228. This deduction could only be made in computing the income of corporations subject to the tax imposed by section 230 of the Revenue Act of 1918 (40 Stat. 1075). The deduction, therefore, could not be used to reduce the income received in 1917 for the purpose of determining the tax under laws effective in 1917. The agreed consolidated net income for the fiscal year ending March 31, 1918, amounting to $882,284.88, was presumably for the greater part received in 1917, and parties are content in the assumption that three-fourths of this income is to be allocated to the year 1917.

I can see no merit in the taxpayer's contention that the Commissioner had spread the amortization allowance over taxable periods outside of the amortization period. As I read his computation, he has kept the entire amount within the calendar year 1918, which all are agreed was the amortization period.

I am satisfied that the Commissioner, in making his latest computation, has followed the amended regulations of 1928, and I have been unable to discover anything in the law which forbids his allocation of the amortiza-

tion allowance. It is my opinion that his action is consistent with American Hawaiian S. S. Co., supra, and is in no way incompatible with any of the provisions of the Revenue Act of 1918. The cases cited by the taxpayer in support of its theory are not only distinguishable on the facts, but they arose under entirely different provisions of law. I fail to see how any analogy holds between those cases and the case at bar.

My conclusion, therefore, is that the taxpayer has not made out a claim entitling it to prevail in these suits, and that judgment for the defendants may be entered in all of them.